UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE PETERSON,

        Plaintiff,

v.                                                                        CASE NO. 2:12-cv-13729

MARIO TALIAFERRO and DECO               HON. MARIANNE O. BATTANI
SECURITY SERVICES, INC.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND ORDERING SUPPLEMENTAL BRIEFING**

This matter is before the Court on Defendants Mario Taliaferro and DECO Security Services, Inc's separate motions for summary judgment. (Docs. 42, 43). Plaintiff Yvonne Peterson filed the instant action as representative of decedent Curtis Peterson alleging assault and battery, negligence, and excessive use of force in violation of 42 U.S.C. § 1983 arising out of a shooting at the Social Security Administration building in Detroit. The Court heard oral argument on the motion on November 21, 2013, and at the conclusion of the hearing, took the matter under advisement. For the reasons stated below, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**. In addition, the parties are **ORDERED** to submit **SUPPLEMENTAL BRIEFS** to address Plaintiff's Bivens claim by **JANUARY 10, 2014**.

I.    STATEMENT OF FACTS

Defendant Mario Taliaferro worked as a security guard for Defendant DECO Security Systems Inc., which provides security for the Social Security Administration

("SSA") building in Detroit. At approximately 5:20 PM on August 26, 2011, Taliaferro checked the surveillance cameras in order to determine whether it was safe for employees to head to their vehicles. Taliaferro spotted two men approaching the fence, one of which was Curtis Peterson, the deceased. Peterson and another man broke into the parking lot and smashed the window of Taliaferro's Cadillac Escalade to steal the navigation system.

Taliaferro immediately contacted the DECO command center for further assistance. He then proceeded outside to the parking lot with his gun drawn. The other three SSA employees, Kendra Turner, Janet Lee, and Julia Wilkins, remained in the building. Once Taliaferro encountered the men, he ordered them to "freeze," but they fled. Although one man scaled the fence, Peterson ran past Taliaferro along the perimeter of the fence to escape. Taliaferro then claims that Peterson reached into his pocket for a "shiny object," possibly a weapon. In response, Taliaferro fired multiple shots, one of which struck Peterson in the lower back and resulted in his death. The Michigan State Police Forensic Report noted eight shell casings at the scene.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, (1986). Rule 56 mandates summary judgment against a party who fails to establish the

existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

### III.    ANALYSIS

#### A.    Peterson's State Law Claims

##### 1.    Assault and Battery

Under Michigan law, an assault is "'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.'" Grawey v. Drury, 567 F.3d 302, 315 (6th Cir. 2009) (quoting People v. Nickens, 685 N.W.2d 657, 661 (2004)). "A battery is 'an unintentional, unconsented, and harmful or offensive touching of the person of another, or of something closely

connected with the person.'" Id. Certainly, pointing a gun at and shooting someone constitutes an assault and battery. Taliaferro does not dispute this; rather, he argues that Peterson's claims fail under the Michigan common law and statutory wrongful conduct rules. DECO also argues that Michigan law permits the use of deadly force to make an arrest.

### a. Statutory Rule vs. Common Law Rule

Michigan's common law wrongful conduct rule provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." Orzel v. Scott Drug Co., 537 N.W.2d 208, 212 (Mich. 1995) (citing 1A CJS, Actions, § 29, p.386). However, the plaintiff's wrongful conduct at issue must be in violation of a criminal statute, not merely safety statutes such as traffic laws. Id. at 214. In addition, "for the wrongful-conduct rule to apply, there must exist a sufficient causal nexus between the plaintiff's illegal conduct and the plaintiff's asserted damages." Id. at 215. In other words, if the illegal conduct is collateral or incidentally connected to the cause of action, or the original wrongful conduct has completed, the rule is inapplicable. Id. Rather, the illegal conduct must be a proximate cause of the asserted injuries. Id. at 216. For example, engaging in an illegal bingo game and then falling into an open hole negligently maintained by the owner of the premises does not implicate the wrongful conduct rule because the illegal bingo game finished before plaintiff fell into the hole. See Manning v. Noa, 76 N.W.2d 75 (Mich. 1956).

Michigan also recognizes a statutory version of the wrongful conduct rule. Enacted in 2000, Mich. Comp. Laws § 600.2955b provides:

> (1) Except as otherwise provided in this section, the court shall dismiss with prejudice a plaintiff's action for an individual's bodily injury or death . . . if the bodily injury or death occurred during 1 or more of the following:
>
>> (a) The individual's commission, or flight from the commission, of a felony.
>>
>> (b) The individual's acts or flight from acts that the finder of fact in the civil action finds, by clear and convincing evidence, to constitute all the elements of a felony.
>
> (2) If the bodily injury or death described in subsection (1) resulted from force, the court shall not apply subsection (1) to the claim of the plaintiff against a defendant who caused the individual's bodily injury or death unless the court finds that the particular defendant did either of the following:
>
>> (a) Used a degree of force that a reasonable person would believe to have been appropriate to prevent injury to the defendant or to others.
>>
>> (b) Used a degree of force that a reasonable person would believe to have been appropriate to prevent or respond to the commission of a felony. In making a finding under this subsection, the court shall not consider the fact that the defendant may not have known that the plaintiff's actions or attempted actions would be the commission of a felony.

M.C.L. § 600.2955b. The reasonableness of the defendant's use of force is a question for the trial court, not a jury. § 600.2955b(2)(b) ("In making a finding . . . *the court* shall not consider . . . .") (emphasis added).

Here, Peterson's conduct in breaking into the SSA parking lot and then breaking the window of a vehicle in an attempt to commit a larceny implicates both the common law and statutory wrongful conduct rules because his actions constitute multiple felonies under Michigan law. In addition, it is clear that Peterson's conduct is a proximate cause of his death. It is foreseeable that breaking into a federal facility to commit a felony and then fleeing arrest may result in injury or death, as police and security guards often

5

carry weapons for protection. However, there is an important distinction between the two rules: the statutory rule requires the conduct of the defendant be reasonable, while the common law rule contains no such requirement. Initially, it appears that the common law rule would bar Peterson's claims regardless of the reasonableness of Taliaferro's actions. However, the Court finds that the statutory rule governs in this case because it displaces the common law rule.

The common law rule was last applied in 1995 by the Michigan Supreme Court in Orzel v. Scott Drug Co., a negligence action against a pharmacy. 537 N.W.2d at 209. The court found the parties equally at fault, precluding the plaintiff's negligence claim under the common law wrongful conduct rule. Id. at 217. In 2000, the Michigan Legislature codified a version of the rule in M.C.L. § 600.2955b, narrowing it to preclude lawsuits only if the defendant's conduct is reasonable in light of the circumstances. Notably, at least one Michigan appellate court concluded that § 600.2955b codified the common law rule. See English v. Himmell-Thompson, 2006 WL 51154 at *2 (Mich. Ct. App. Jan. 10, 2006) ("In M.C.L. § 600.2955b our Legislature codified the common-law wrongful-conduct rule for felonies."). Whether the statute was enacted in response to tort reform legislation, as Peterson argues, is of no consequence. Rather, it is clear that the Michigan legislature created a narrower rule to prevent dismissal of suits where the defendant's conduct rises to an unreasonable level.

Moreover, the statutory rule is effectively of little worth as long as the common law rule continues to stand. If courts are constrained to apply the longstanding common law rule in lieu of the statutory rule, suits would be precluded before a determination of reasonableness is necessary. Although not mutually exclusive, a court must ignore one

6

rule to apply the other. If, in fact, the defendant's conduct is later determined reasonable, either rule serves to bar plaintiff's action. However, if the defendant's conduct is unreasonable, only the common law rule will bar the lawsuit. This requires courts to make a finding of reasonableness under the statutory rule prior to determining which rule applies in the first place. Indeed, there is a lack of Michigan precedent instructing courts on which rule takes precedent in certain cases, permitting courts to arbitrarily pick which rule it wishes to apply. Consequently, the Court finds that the statutory rule displaces the common law rule for purposes of this case, as it provides an important limitation on the conduct of defendants and provides a uniform standard. See Trentadue v. Buckler Automatic Sprinkler Co., 738 N.W.2d 664, (Mich. 2007) (noting that "the Legislature has the authority to abrogate the common law" and "if a statutory provision and the common law conflict, the common law must yield").

In addition, the application of the statutory rule defeats DECO's argument that a private individual may use deadly force that is necessary to effectuate an arrest under M.C.L. § 764.16. Like the common law wrongful conduct rule, there is no explicit requirement that the defendant's actions be reasonable. In fact, the statute is silent regarding the degree of force permitted. Michigan case law provides that such force must be "necessary" to effectuate the arrest. See People v. Whitty, 292 N.W.2d 214, 219 (Mich. Ct. App. 1980) ("In order to make the citizen's arrest, it is regrettable, but sometimes necessary, to make use of deadly force."). However, this does not correspond with the more recently enacted statutory wrongful conduct rule. Again, the Court would have to ignore that rule in order to apply § 764.16, something the Court declines to do in this case.

        b.     Reasonableness

As the statutory wrongful conduct rule applies to this case, the Court must then determine whether Taliaferro's use of force was reasonable.  Pursuant to § 600.2955b(2)(b), the reasonableness of the defendant's conduct is a question for this Court, not a jury.  However, the Court declines to determine this issue at the summary judgment stage.  Instead, the Court will make its ruling after testimony is taken from the parties in this case, during which the Court may better make credibility determinations and consider admissible evidence in the record.

        2.     Negligence

In her Complaint, Peterson alleges multiple counts of intentional torts.  However, she also pleads one count of negligence.  Under Michigan law, intentional tort claims cannot be transformed into alternative claims of negligence.  See VanVorous v. Burmeister, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004) (finding plaintiff failed to state a claim upon which relief could be granted regarding claim of gross negligence where plaintiff alleged intentional tortious conduct).  Here, Peterson's claims clearly rest on the intentional actions of Taliaferro.  In fact, Taliaferro does not dispute that he intended to shoot Peterson.  Consequently, Peterson's negligence claim is dismissed against both Defendants.

**B.    Peterson's Excessive Force Claim Against Taliaferro**

Peterson alleges a § 1983 claim for excessive force against Taliaferro, claiming he is a state actor because he is licensed under M.C.L. §§ 338.1053; 338.1079.  However, Taliaferro is not licensed under Michigan law.  Instead, he is assigned to protect a federal government building as an employee of a federal government

contractor, DECO. As such, Peterson's claim is not actionable against an alleged federal agent under § 1983. Instead, her claim is more appropriately brought under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1999), which created an analogous cause of action against private individuals acting under color of federal law. Although courts are not required to convert a § 1983 claim into a Bivens claim, Mitchell v. Chapman, 343 F.3d 811, 825 (6th Cir. 2003), the Court finds it appropriate to do so in this case.

Importantly, in Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the Supreme Court held that a Bivens action only lies if the plaintiff "lack[s] any alternative remedy." In other words, courts are reluctant to permit a Bivens action if the plaintiff can seek sufficient redress in another forum. Like § 1983, the alternative remedy must serve to deter constitutional violations by individuals. Carlson v. Green, 446 U.S. 14, 21 (1980).

Because the Court construes the § 1983 claim as a Bivens claim, the parties may each submit one supplemental brief by January 10, 2014. The briefs must discuss the potential effect of Malesko, as Peterson's state law claims survive and she may have sufficient alternative remedies in another forum. Subsequently, the Court will render a decision on whether there is a genuine dispute of material fact regarding Peterson's Bivens claim after the briefs are submitted. No oral argument is necessary, and the Court will render its decision solely upon the briefs in accordance with E.D. Mich. L.R. 7.1(f)(2).

Last, Peterson's Complaint may be reasonably read to allege a <u>Bivens</u> action against DECO.  However, Peterson concedes that cause of action is not viable.  Thus, the Court dismisses Peterson's <u>Bivens</u> claim against DECO.

## IV.  CONCLUSION

Accordingly, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.  In addition, the parties are **ORDERED** to submit **SUPPLEMENTAL BRIEFS** regarding Plaintiff's <u>Bivens</u> claim by **JANUARY 10, 2014**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE:  <u>December 5, 2013</u>

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt

Case Manager
